Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2918 | **DATE** | 2/28/2002 |
| **CASE TITLE** | DEBRA GARRISON vs. WESTAT, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment [24-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 01 2002 | 28 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 2/28/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CB | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 MAR -1 AM 11:09 Date/time received in central Clerk's Office | CB mailing deputy initials | |

**DOCKETED**

**MAR 0 1 2002**

| | | |
|---|---|---|
| DEBRA GARRISON | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 2918 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| WESTAT, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Debra Garrison sues Westat, Inc. ("Westat") for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Westat moves for summary judgment.

## BACKGROUND

All facts are undisputed unless otherwise noted.[1] Garrison, an African-American female, was employed as a Westat field interviewer in 1991. Westat funded Garrison's training, transportation, and housing costs, and provided her with a stipend. After two weeks, Garrison quit her job with Westat. Dan Najjar, Garrison's supervisor, gave Garrison a "Code 4" rating in his final evaluation. The Code 4 rating provides that a supervisor has determined an employee was dishonest with the company. Najjar concluded Garrison was dishonest about her commitment to Westat because she received Westat benefits but quit after two weeks. Westat's policy provides that a Code 4 evaluation

---

[1] Westat failed to respond to Garrison's Rule 56.1 statement of additional facts. Pursuant to Local Rule 56.1(a), those facts are deemed admitted.

1

precludes the company from rehiring that employee in the future.

Beginning in 1994, Westat operated the medical expenditure survey project for the federal government. Garrison was employed on the project through the National Opinion Research Center ("NORC") for five years. In mid-2000, Garrison applied for a Westat Panel 6 survey project supervisor position. Rita Stone was chairperson of Westat's hiring committee, and Amanda Hall was Westat's recruitment director. The hiring committee evaluated a number of candidates for vacant Panel 6 supervisor positions. Two African-American and two Hispanic candidates were also considered. The committee heard presentations on Garrison's performance at NORC by Stone and Kathy Robison, another member of the hiring committee. Stone and Robison provided negative reviews about Garrison's work at NORC. Specifically, Robison informed the committee that Garrison failed to timely identify and report a system back-up of 354 files that accumulated in October and November 1997. Stone reported that Garrison's production rates for her region were below the national average. The Code 4 evaluation in Garrison's file was not disclosed to the committee. In October 2000, the committee rejected Garrison for a supervisor position.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Res. Comm.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the

record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Bay v. Cassens Transp., Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). If the moving party meets this burden, the nonmovant must then respond by setting forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e). Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. *See* Fed. R. Civ. P. 56(c), (e).

## II.    Title VII Race Discrimination

Title VII provides that "[i]t shall be unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.] " 42 U.S.C. § 2000e-2(a)(1); *Campbell v. Dominick's Finer Foods, Inc.*, 85 F.Supp.2d 866, 870 (N.D. Ill. 2000). Garrison may prove intentional race discrimination through direct or indirect evidence. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081,1088 (7th Cir. 2000); *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000). Garrison concedes she is unable to offer direct evidence of race discrimination. Instead, Garrison proceeds under the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 889 (7th Cir. 1997). First, Garrison must establish a *prima facie* case of race discrimination. *McDonnell Douglas*, 411 U.S. at 802. If successful, the burden of production shifts to Westat to articulate a legitimate, nondiscriminatory reason for its employment

action. *Id.* If Westat provides a legitimate reason, the burden shifts back to Garrison to prove by a preponderance of the evidence that Westat's proffered reason was a pretext for discrimination. *Id.* at 804.

### A.  *Prima Facie* Case.

In order to establish a *prima facie* case under *McDonnell Douglas*, Garrison must prove: (1) that she belonged to a protective class; (2) that she applied for and was qualified for a particular position; (3) that she was subjected to an adverse employment action; and (4) that similarly-situated employees were treated more favorably. *Pitasi v. Gartner Corp., Inc.*, 184 F.3d 709, 716 (7th Cir. 1999). The parties do not dispute Garrison is a member of a protective class, she was rejected for a Westat supervisor position, and non-African-American employees were accepted for those positions. The parties dispute whether Garrison was qualified for the supervisor position. Westat's argument to demonstrate Garrison was not qualified is identical to its proffered non-discriminatory reasons for rejecting Garrison. That analysis melds with pretext because Garrison asserts Westat's reasons for the adverse employment action are false. *See Denisi v. Dominick's Finer Foods*, 99 F.3d 860, 864 (7th Cir. 1996) (second *prima facie* element and pretext often overlap). Accordingly, the court turns to the second and third prongs of the *McDonnell Douglas* test. *See Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998) (where a defendant offers a legitimate non-discriminatory reason for its employment decision, the court may proceed directly to pretext under *McDonnell Douglas*).

### B.  **Legitimate Non-discriminatory Reason**

Westat must establish a legitimate, non-discriminatory reason for its failure to hire Garrison as a Panel 6 supervisor. Westat offers two reasons for the hiring committee's rejection of Garrison.

First, Robison informed the hiring committee that Garrison failed to report a system back-up of over 354 files that accumulated during five weeks in October and November 1997. Westat's field supervisor manual alerts its employees to back-up transmission problems. Because of the computer problem, Garrison could not receive transmissions from Westat's headquarters and she could not transmit data in response. Def. 56.1 Facts, Hall Aff. at ¶ 7. Robison told the committee that Garrison's failure to report the transmission problem severely hampered her ability to manage the assigned region. Second, Stone informed the committee that Garrison's production rates were lower than the national average. Def. 56.1 Facts, Stone Aff. at ¶ 11. Westat contends it places a strong emphasis on high production rates for each region because it provides an indication of the quality of its survey. *Id.* at ¶ 12. Stone expressed concern about Garrison's performance to the committee.

In addition, Westat asserts Garrison's Code 4 violation in her employment file demonstrates she was not qualified for the Panel 6 supervisor position. Westat's 1991 employee evaluation form provides that an employee who receives a Code 4 cannot be rehired by Westat. *See* Def. 56.1 Facts, Lamour Aff. at ¶¶ 3-4, Ex. B. However, the Code 4 violation is irrelevant because it is undisputed Westat's hiring committee was unaware of the Code 4 violation. Pl. 56.1 Facts at ¶ 2; *Smith v. Prudential Ins. Co.*, No. 98 C 5903, 2000 WL 549483, at *4 n.1 (N.D. Ill. May 1, 2000) (court held plaintiff's false resume was irrelevant to plaintiff's qualifications because defendant was unaware of the resume at the time of employment decision); *see also Richter v. Hook-Superx, Inc.*, 142 F.3d 1024, 1030 (7th Cir. 1998) (after-acquired evidence is irrelevant).

Nevertheless, Westat advances evidence of legitimate, non-discriminatory reasons for its rejection of Garrison for the supervisor position. Garrison does not dispute the occurrence of the above incidents. When an employer articulates a reason for discharging the plaintiff, the court does

not evaluate whether that reason was wise, fair or correct. *Giannopoulous v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997). Westat's hiring committee determined Garrison lacked the management skills and ability to perform the functions of a Panel 6 supervisor. The burden shifts to Garrison to demonstrate pretext.

### C. Pretext

Garrison must demonstrate Westat's proffered reason for her termination is pretextual. "A pretext, in employment law, is a phony reason that the employer offers for engaging in discriminatory conduct." *Mills v. First Fed'l Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 845 (7th Cir. 1996) (internal quotations omitted). The wisdom of the employer's decision is not at issue; the genuineness of the employer's motives is significant. *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 304 (7th Cir. 1996). A plaintiff can demonstrate an employer's proffered reason is pretextual: "(1) by showing that a discriminatory reason more likely than not motivated the employer"; or (2) "that the employer's proffered explanation is unworthy of credence." *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir. 1994). Where the defendant offers multiple reasons for its employment decision, the plaintiff must show that all of the proffered reasons are pretextual. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 459 (7th Cir. 1999).

Garrison does not advance evidence to demonstrate a racial animus motivated the hiring committee's decision. Instead, Garrison asserts Westat's proffered reasons are false by contesting the severity of the incidents relied upon by Westat's hiring committee. Garrison does not dispute that she experienced problems with the computer back-up system in October and November 1997. In contrast, Garrison contends the problem was not serious because it was rectified in thirty minutes when discovered, and computer problems were frequent among field managers and interviewers. Pl.

56.1 Facts, Johnson Aff. at ¶ 5.  Similarly, Garrison concedes her production rates were lower than national averages, and production rates were important to Westat. *See* Pl. Resp. Br. at 12.  However, she argues it was difficult for her to meet the national average in the Chicago region. Pl. 56. 1 Facts, Johnson Aff. at ¶ 2.  Garrison asserts she did not receive negative evaluations about her production rates until the hiring committee considered it relevant to her supervisor job application.

Garrison's assertions are without merit.  Title VII does not prohibit employers from making employment decisions based on that which an employee considers a *de minimis* infraction. *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999).  Thus, Garrison's belief these incidents were not serious cannot defeat summary judgment. *See Ghosh v. Indiana Dep't of Environmental Mgmt.*, 192 F.3d 1087, 1093 (7th Cir. 1999) (employer's purported erroneous assessment of plaintiff's interview skills cannot demonstrate pretext).  The court does not sit as "a super-personnel department that reexamines an employer's personnel decisions... [or] second-guess an employer's policies that are facially legitimate." *Id.*; *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 396 (7th Cir. 1998).  Westat's medical survey project required its employees to identify computer-related transmission problems because they were important to the management of interviewers in a particular region. Def. 56.1 Facts, Stone Aff. at ¶ 9.  Garrison does not dispute that it was necessary for her to receive computer transmissions to perform the functions of a field interviewer.  Westat concluded Garrison failed to timely identify and rectify the problem.  Garrison asserts she contacted the hotline earlier than October 22, 1997, the date Westat contends she first realized the transmission problem. Pl. 56.1 Facts, Garrison Dep. at p.74. Even if Garrison's assertion were true, Garrison fails to advance evidence to establish the hiring committee did not honestly believe she failed to timely identify and correct the computer transmission problem.

Moreover, it is undisputed Westat considered an employee's production rates important, and Garrison's rates were below the national average. Garrison's argument that it was difficult for her to meet the national average in the Chicago region is irrelevant. If the employer honestly believed in those reasons, "the plaintiff loses even if the reasons are foolish or trivial or baseless." *Kariotis v. Navistar Intern. Transp. Ctr.*, 131 F.3d 672, 676 (7th Cir. 1997). Further, Westat has discretion to decide the appropriate weight that should be given to Garrison's mistakes in determining the qualities that are necessary for a Panel 6 supervisor position. Although Garrison did not receive negative evaluations for her production rates, the hiring committee determined her productions rates were relevant to her qualifications for a supervisor position. An employer is free to develop its own criteria in making hiring decisions. *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001); *see also Haywood v. Lucent Technologies, Inc.*, 169 F.Supp.2d 890, 913 (N.D. Ill. 2001) (plaintiff fails to demonstrate pretext where plaintiff criticized the criteria used in the evaluation process).

Only when an employee provides "[a] detailed refutation of events which underlie the employer's negative performance assessment," the employee demonstrates "that the employer may not have honestly relied on the identified deficiencies in making its decision." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1460-61 (7th Cir. 1994). The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered. *Jackson v. E.J. Brach Co.*, 176 F.3d 971, 984 (7th Cir. 1999). Garrison provides no evidence to demonstrate Westat's hiring committee did not honestly believe she was not qualified for the Panel 6 position. *See Carson v. Armstrong World Indus., Inc.*, No. 98 C 4205, 1999 WL 1267708, at *6 (N.D. Ill. Nov. 30, 1999) (where plaintiff attacks the correctness of the employer's decision to demonstrate pretext, summary judgment must be granted). Indeed, Garrison does not dispute the occurrence of

the incidents relied upon by Westat. *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir.1997) ("The mere fact that the employer acted incorrectly or undesirably . . . cannot adequately demonstrate pretext."); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994) (stating that plaintiff must "produce evidence from which a rational factfinder could infer that the company lied").  Consequently, Garrison's contentions relate only to the wisdom of the hiring committee's decision. *See Ghosh*, 192 F.3d at 1093.

Garrison relies on the absence of African-Americans on the hiring committee to demonstrate her rejection was pretextual.  Lack of diversity on a hiring committee cannot demonstrate the entire committee was infected with racial animus.  Nor does it demonstrate the hiring committee did not honestly believe Garrison was unqualified for the supervisor position.  Similarly, Garrison contends other African-American candidates did not receive Panel 6 supervisor positions.  However, the hiring committee received only two applications from African-American candidates – Garrison and Jayne Turner.  Def. 56.1 Facts, Hall Aff. at ¶ 4.  Turner received a supervisor position at Westat's headquarters instead of a Panel 6 position.  *Id.*  Viewing the evidence in the light most favorable to Garrison, Garrison's assertions fail to create a genuine issue for trial on pretext.

Garrison asserts Westat's failure to provide its employees clear, objective factors for hiring supervisors demonstrates its proffered reasons are false.  Garrison offers no evidence to support this position.  In contrast, Westat contends its hiring committee evaluated candidates based on their potential for a high level of productivity; management and technical skills; and ability to meet the supervisor position goals. Def. 56.1 Facts, Hall Aff. at ¶ 5.  Even if Garrison's assertions were true, Garrison's argument only demonstrates Westat may have an undisciplined approach for hiring supervisors. "Criticism of an employer's evaluation process, even if well-founded, is not enough to

establish pretext." *Kariotis*, 131 F.3d at 677.

Finally, Garrison points to her good evaluations from her work on the medical survey project for NORC. However, Garrison's good performance in some aspects of her job does not require a rejection of Westat's other reasons for its failure to hire. *See Anderson v. Stauffer Chemical*, 965 F.2d 397, 403 (7th Cir. 1992) ("The fact that an employee does some things well does not mean that any reason for [her] firing is a pretext for discrimination"). Accordingly, Garrison fails to create a genuine issue for trial that Westat's proffered legitimate, non-discriminatory reasons for its failure to hire are pretextual.

## CONCLUSION

The motion for summary judgment is granted.

February 28, 2002

ENTER:

Suzanne B. Conlon
United States District Judge